MAUD NORRIS, Respondent, v. FARMERS MUTUAL FIRE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, March 23, 1896.

1. **Insurance**: WAIVER: ESTOPPEL. Estoppel as an element in connection with the waiver of preliminary proofs of loss means that the insurer knowing the proofs of loss have not been furnished within the time so bears himself thereafter in relation to the contract as falsely to lead the assured to believe that he still recognizes the policy to be in force and binding on him.

2. ———: ———: ———. In this case the defendant's conduct, commencing within and extending beyond the time for making proofs, operated in the nature of an estoppel and was sufficient to cause plaintiff to believe that proofs of loss were not required. *Cohn v. Ins. Co.*, 62 Mo. App. 271, distinguished.

3. ————: APPLICATION: SHINGLES: ROOF: CLAPBOARDS. The application described the roof as a shingle roof. The evidence showed a clapboard roof. *Held,* the variance was immaterial.

4. ————: GRAIN: MILLET HAY: APPELLATE PRACTICE. Millet hay is included in the terms of an insurance policy where grain is described as the subject of the risk in the application; and this especially since the objection was raised first in the appellate court.

5. ————: INSTRUCTIONS: FOUR FIFTHS OF THE VALUE. In this case the objection to the instructions relating to liability beyond four fifths of the actual cash value, is *held* to be without force.

*Appeal from the Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*Wilson & Watkins* for appellant.

(1) Defendant's demurrer to plaintiff's evidence should have been sustained. Compliance with a condition in a policy of fire insurance requiring proofs of loss is a condition precedent to recovery under the policy; and no proofs of loss were ever made or attempted to be made in this case. *McCullough v. Ins. Co.,* 113 Mo. 606; *Leigh v. Ins. Co.,* 37 Mo. App. 542; *Hanna v. Ins. Co.,* 36 Mo. App. 538; 1 Beach on Insurance, 457. (2) There was no waiver of proofs of loss. Agreement to arbitrate the amount of loss does not constitute a waiver of proofs of loss, even where such agreement is entered into within the time required for making proofs of loss. *Noonan v. Ins. Co.,* 21 Mo. 81; *Hanna v. Ins. Co.,* 36 Mo. App. 538; *Pettingill v. Hinks,* 9 Gray, 169. (3) In this case the policy called for proofs of loss to be made "as soon as possible after the fire," and there was no arbitration spoken of by either party until at least two months thereafter. There can be no waiver of proofs of loss after the time has expired within which they are to be made. *Cohn v.*

*Ins. Co.*, 62 Mo. App. 271; *Bolan v. Fire Ass'n*, 58 Mo. App. 225; *LaForce v. Ins. Co.*, 43 Mo. App. 518; *Erwin v. Ins. Co.*, 24 Mo. App. 145; 7 Am. and Eng. Encyclopedia Law, 1049; May on Insurance [1 Ed.], 565, sec. 462. (4) It was error for the court to instruct the jury that they should include in their verdict against the defendant the value of the hay destroyed, when no hay was insured, as was done in plaintiff's instruction number 2. (5) The statement in plaintiff's application that the barn was shingle roof constituted a warranty, a breach of which is shown by plaintiff's testimony that the barn was covered with "clapboards, and with inch lumber with tarred paper on top of that, and then stripped down with strips." A warranty in a policy of fire insurance is like a condition precedent. Its materiality is not open to inquiry, nor will the good faith of the warrantor obviate the effect of a breach. *Loehner v. Ins. Co.*, 17 Mo. 247; *Shoup v. Ins. Co.*, 51 Mo. App. 286; *Lama v. Ins. Co.*, 51 Mo. App. 447; May on Insurance [1 Ed.], p. 160, sec. 156; 1 Beach on Insurance, 457.

*Luke H. Moss* for respondent.

(1) It can not be denied that plaintiff's evidence tended to establish a waiver of proof of loss, the weight and sufficiency of which is always for the jury to determine. *Gale v. Ins. Co.*, 33 Mo. App. 664; *Ins. Co. v. Kyle*, 11 Mo. 278; *Kerr v. Cusenbery*, 60 Mo. App. 558; *Phillip v. Ins. Co.*, 14 Mo. 221; *Summers v. Ins. Co.*, 45 Mo. App. 46; *Okey v. Ins. Co.*, 29 Mo. App. 111, 112; Wood on Fire Ins., secs. 446, 465; *Summers v. Ins. Co.*, 45 Mo. App. 46; *McBride v. Ins. Co.*, 30 Wis. 568.

SMITH, P. J.—This is a suit on a fire insurance policy commenced before a justice of the peace. The

property covered by the policy and destroyed by the fire consisted of a barn and the grain therein.

It is conceded that the plaintiff gave the defendant timely notice of the occurrence of the fire. The integrity of the loss is not called in question. The plaintiff did not make proof of loss "as soon after the fire as possible," or at all. The defendant here insists that the failure of the plaintiff in this regard was fatal to his right of recovery for the loss. Undoubtedly this insistence must be sustained, unless the requirement of the policy as to proofs of loss was waived by the defendant.

The instruction of the court told the jury that if the defendant made no objection to plaintiff's claim, on account of his failure to make proofs of loss, but based its refusal to pay such loss upon the ground that the plaintiff's barn was insured for more than it was worth, then defendant waived the necessity of proof of loss.

It is the well established law everywhere that the production of proofs of loss may be waived and that such waiver may be implied from what is said or done by the insurer. "Estoppel, as an element in connection with the waiver of preliminary proofs of loss, means where the insurer, knowing the proofs have not been furnished within the time, so bears himself thereafter in relation to the contract as fairly to lead the assured to believe that he still recognizes the policy to be in force and binding on him." The above paragraph from *Oakes v. Ins. Co.*, 51 Md. 512, was quoted by us with approval in *Okey v. Ins. Co.*, 29 Mo. App. 105. And so it was declared by us in *Porter v. Ins. Co.*, 62 Mo. App. 520, that there must be something in the conduct of the insurer in the nature of an estoppel, to constitute a waiver of a condition of a policy. The insurer must have done something, or omitted to do

something, which has misled the assured and caused him to believe that would not be expected which is later on claimed he should have performed. And this statement of the law is but a repetition of what was said in *Grigsby v. Ins. Co.*, 40 Mo. App. 276; *Hanna v. Ins. Co.*, 36 Mo. App. 538; *Leigh v. Ins. Co.*, 37 Mo. App. 542; *Erwin v. Ins. Co.*, 24 Mo. App. 152.

There is evidence in the present case tending to show that within the next two weeks after the plaintiff gave notice of the fire, he inquired of the defendant's local agent why the loss had not been adjusted, and that the agent thereupon called the attention of the secretary and adjuster of the defendant to the matter, who gave the plaintiff the assurance that on the next day he would take the matter up and visit the place where the fire occurred. It appears that the defendant's secretary and adjuster, in company with its local agent, accordingly visited the place of the fire, and that shortly thereafter the plaintiff inquired of the defendant's said secretary and adjuster, why the matter of his loss had not been settled up; whereupon the latter informed the plaintiff that he thought the barn was insured for too much and that he did not care to pay such an amount. In consequence of this disagreement, the defendant's secretary and adjuster proposed to have the amount of the loss settled by arbitration, which proposition was accepted by the plaintiff. It appears that it was impossible to name arbitrators that were satisfactory to the defendant. Negotiations in respect to the arbitration were continued until more than sixty days after the fire. The defendant's secretary and adjuster testified that the only matter of difference between defendant and the plaintiff was as to the value of the property.

It is thus seen that from the time the defendant's secretary and adjuster visited the scene of the fire, to

the time of the commencement of this suit, he recognized the binding force of the policy and the obligation of defendant to pay the loss; the only question being as to the amount it ought to pay. In this case, as in *Okey v. Insurance Co.*, *ante*, the only issues raised by the defendant were those of waiver and the value of the personal property covered by the policy, and it must be ruled here, as there, that the evidence was sufficient to justify the submission of both of these issues to the jury. It is plain to our mind that the defendant's line of conduct, commencing within the time in which the plaintiff could have, according to the terms of the policy, made proof of loss, and extending to a time when he could not have done so, operated on the parties in the nature of an estoppel, such as to cause the plaintiff, as a reasonably prudent man, to believe that proofs of loss were not required by defendant.

This case is distinguishable from that of *Cohn v. Insurance Co.*, 62 Mo. App. 271, and the other cases cited by defendant, for the reason that here there is an unbroken line of conduct, relied on as establishing a waiver, extending from within the time in which proofs of loss could have been made under the policy, until long after the expiration of that time. The condition of the policy in respect to the time of making the proofs of loss was eliminated by the waiver, if there was a waiver, of which we think there was evidence, before the expiring of the time in which it had required the proofs to be made.

In the application was the statement: "$150 on shg. roof frame, barn,"—the evidence tending to show that the barn so described was covered with clapboards. It may be that the abbreviation "shg." should be interpreted to mean "shingle" and that therefore the description of the risk was, in that particular, untrue;

still, we must think this misdescription so immaterial as presumably not to have been regarded by either party as of importance and therefore not to be converted into a warranty. May on Ins., sec. 256.

The defendant further contends that the court erred in directing the jury, by its instruction numbered 2, that if they found for the plaintiff, to further find as damages for the loss of the *grain and hay*, such sum as they believed from the evidence the same were worth, at the place of the fire, not exceeding $150. The point of the objection is that only *grain* is described as the subject of the risk in the application, and that therefore to direct the jury to allow damages for the loss of hay was erroneous. It appears from the evidence that at the time of the issue of the policy, and the loss, the barn contained corn and millet hay. If corn and millet hay are comprehended within the term *grain*, then the instruction complained of was not improper. This term in the Century Dictionary, at page 2592, is defined thus: "A small, hard seed; specifically, a seed of one of the cereal plants, wheat, rye, oats, barley, maize, or millet, collectively; corn in general; the gathered seeds of cereal plants in mass, also the plants themselves, whether standing or gathered; as to grind or thresh *grain*; a field or stack of *grain*." It would therefore seem that millet is a cereal plant and whether the seeds are gathered in mass, or whether the plants are standing in the field, or in the stack, that in any or either of these conditions, it is grain. The above authority also informs us that it is used for breadstuff in the east. And whether or not, commercially speaking, it strictly falls within the meaning of the term "grain," we are inclined to so regard it in the present case.

As disclosed by the evidence adduced by both parties, the case was tried upon the theory that the

defendant was as much liable for the value of the millet as for the corn that was in the barn. No objection was made by defendant to proof of the quantity and value of the millet, but on the contrary, the defendant itself introduced evidence as to the quantity and value thereof. We do not therefore feel at liberty to sustain the defendant's said objection made here for the first time, that the millet hay was not covered by the risk.

Nor do we perceive any force in the objection that the court in its instructions ignored the provision of the policy to the effect that the defendant "should not be liable beyond four fifths of the actual cash value of the property at the time any loss or damage occurs," for the reason that the evidence discloses that the barn was a total loss and the measure of the damages as to that item was the full amount for which it was insured, there being no depreciation shown (Revised Statutes, section 5897); and as to the grain, the restriction of the said provision of the policy, upon its face is inapplicable.

We think the judgment is manifestly for the right party and it must therefore be affirmed. All concur.